## IN THE COURT OF APPEALS OF IOWA

No. 14-0252
Filed April 30, 2014

**IN THE INTEREST OF R.D.,**
        **Minor Child,**

**J.K., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for O'Brien County, David C. Larson, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Tisha Halverson of Klay, Veldhuizen, Bindner, De Jong, De Jong, Halverson & Winterfeld, P.L.C., Paullina, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Micah J. Schreurs, County Attorney, and Lori Kolpin, Assistant County Attorney, for appellee.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

The mother of R.D. appeals the termination of her parental rights. She argues the district court should have granted her an additional six months to obtain reunification, termination is not in the best interests of R.D., and Iowa Code section 232.116(3)(c) (2013) applies to avoid termination of her parental rights. We affirm the termination of the mother's parental rights.

## I. BACKGROUND FACTS AND PROCEEDINGS

R.D. was born in September 2012 with methamphetamine in her system. The mother had been using methamphetamine on a regular basis for approximately five years. R.D. is the mother's fifth child. The mother's parents are raising two of the children, and the other two were adopted.

The mother voluntarily allowed R.D. to be removed from her care when R.D. was five days old. R.D. resided with a paternal aunt until late October 2012, when she was placed with her mother in the Jackson Recovery Center's Women's and Children's Program. R.D. was adjudicated to be a child in need of assistance on December 19, 2012, due to being born with methamphetamine in her system and her mother being unable to provide adequate care because of her drug use. R.D. continued to live with her mother in the Women's and Children's Program until her mother was discharged from the program and transitioned to a halfway house. The mother's halfway house did not allow children, so R.D. was again placed with her paternal aunt. After a paternity test revealed that the paternal aunt was not in fact a relative of R.D. and it was discovered R.D. was losing weight, she was moved on May 24, 2013, to a foster family home where she has lived continuously since that time.

The mother was discharged from her halfway house on April 25, 2013. After being discharged, she relapsed on May 17, 2013. The mother contacted her DHS worker and her probation officer to advise them of her relapse. On May 27, 2013, the mother moved back into the halfway house and later transferred to Crossroads Women's Shelter on June 11, 2013. During her stay at the shelter, the mother participated in outpatient substance abuse services through Jackson Recovery Centers. The mother relapsed again on July 14, 2013, and began intensive drug abuse care. The mother relapsed a third time on August 17, 2013, and subsequently returned to the Women's and Children's Program. After learning she had a warrant for her arrest in South Dakota, the mother was incarcerated for her South Dakota probation violations. After serving her time, the mother entered inpatient treatment at Synergy on September 18, 2013. The mother transitioned into a halfway house on October 23, 2013. At the time of the termination hearing, the halfway house recommended the mother remain in their program for an additional three to six months with an additional three to five months of aftercare services.

Because R.D. was born with methamphetamine in her system, she has been developmentally delayed. Since she moved in with her foster family, R.D. has begun ongoing physical and occupational therapy. R.D.'s foster family has experience with drug-exposed children, and R.D. has developed well in that placement. R.D. has bonded with her foster family, and they are willing to adopt her.

On October 10, 2013, the State filed petitions to terminate the mother's and the unknown father's parental rights. A hearing on the petition was held on

November 22, 2013. The State, DHS worker, and R.D.'s guardian ad litem all recommended termination. The court terminated the mother's parental rights pursuant to Iowa Code sections 232.116(1)(h) and 232.116(1)(*l*).[1] The mother now appeals.

## II. STANDARD OF REVIEW

We review termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *Id.*

## III. ANALYSIS

Juvenile courts follow a three-step analysis to determine whether parental rights should be terminated. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The court first determines if the State has proved that there is a ground for termination under section 232.116(1). *Id.* If there is a ground for termination established, the court next decides if termination is in the best interests of the child, using the factors in section 232.116(2). *Id.* at 706–07. If termination is in the best interest of the child, the court considers "if any statutory exceptions set up in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

### A. Request for Additional Time

The mother does not assert that the State failed to prove any of the grounds for termination under Iowa Code section 232.116. Rather, she claims that because she has made reasonable progress "in rectifying her parental

---

[1] The unknown father's parental rights were terminated under section 232.116(1)(b), and there is no appeal regarding that termination.

deficiencies," she should be given an additional six months to obtain reunification.

Iowa Code section 232.104(2)(b) allows a court to continue placement of the child for an additional six months if the court finds the need for removal will "no longer exist at the end of the additional six-month period." "When the issue is a parent's drug addiction, we must consider the treatment history of the parent to gauge the likelihood that the parent will be in a position to parent the child in the foreseeable future." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). The record indicates that at the time of termination, the mother had only been sober for three months and had previously relapsed three times within three months, despite the various substance abuse treatments in which the mother had participated. Each relapse occurred once the mother left a custodial setting. "Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *Id.* Due to the mother's long history of drug abuse and the short time she had been sober, DHS was not in favor of semi-supervised or overnight visits. There is nothing to suggest the mother will continue sobriety or have the time within six months to stay sober and prove she can care for R.D.

We do note that the mother has consistently cooperated with DHS, has always been truthful about her relapses with DHS, and has participated in her weekly visits with R.D. But the record also shows that after over one year of services, the mother was still unable to care for R.D. without DHS involvement. The mother has no driver's license, has no independent housing, and was to

begin a new job the week after the termination hearing. The mother's last meaningful employment was in 2009, but it only lasted a month and one-half. These unresolved issues add to the mother's inability to care for R.D. now or in six months' time. We find the mother has not carried her burden to prove that there would be meaningful improvement if she were granted an additional six months to work on reunification.

**B. Best Interests of the Child**

Next, the mother argues termination is not in R.D.'s best interests. Iowa Code section 232.116(2) requires the court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." This consideration may include whether the child is integrated into the foster family. Iowa Code § 232.116(2)(b). R.D. has been shuffled between a family placement, a substance abuse center with her mother, and now her foster family for her entire life. Half of R.D.'s life has been spent with her foster family. R.D. needs permanency so she can be consistently cared for, and the mother is not able to provide that care immediately. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). The mother has only a vague idea of the extensive medical care R.D. needs due to being born with methamphetamine in her system. R.D. has been developing well in her foster family and has become a part of their family. R.D. does not want to lose sight of her foster mom, and when R.D. is upset, she immediately wants her foster mom. R.D. is integrated into the

family, and the foster family is ready to adopt her. It is in her best interest to terminate and allow her to continue a stable life where all of her needs are met.

### C. Bonding Exception

The mother additionally argues her parental rights should not be terminated because she and R.D. are bonded. Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child if the court finds . . . that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The existence of a bond between the mother and R.D. is a factor that can weigh against termination, but the court may use its discretion in deciding whether to apply the factor to continue the parent-child relationship. *See A.M.*, 843 N.W.2d at 113. It is clear that the mother loves R.D., but the record is also clear that R.D. is bonded with her foster family and is doing well there. DHS and R.D.'s guardian ad litem both agree that termination would not be detrimental to R.D. and advocate termination of the mother's parental rights. R.D. deserves a safe, consistent home, and the bond that she and her mother may have does not outweigh what is best for R.D.'s immediate and future care. Termination of the mother's parental rights is in the best interests of R.D. We decline to invoke the exception to termination found in section 232.116(3).

**AFFIRMED.**